## CIRCUIT COURT OF THE CITY OF RICHMOND

Residents Involved In
Saving the Environment, Inc., et al.

v.

Commonwealth of Virginia,
Department of Environmental Quality, et al.

May 4, 1995

Case No. HD-822-1

BY JUDGE MELVIN R. HUGHES, JR.

This case is an appeal of a state agency decision by the Director of the Virginia Department of Environmental Quality (DEQ) to award a permit to operate a landfill to Browning-Ferris Industries (BFI) in King and Queen County.

The parties are R.I.S.E. and others, appellants, and DEQ and its director, appellees. BFI became a party later in the proceedings by intervention. R.I.S.E. is an acronym for Residents Involved In Saving the Environment, Inc. R.I.S.E. is composed of concerned citizens of King and Queen County. It along with other named individuals, a church and a farming corporation, comprise the appellants (collectively R.I.S.E).

In its appeal R.I.S.E. argues that according to Title 10.1 of the Code of Virginia relating to Conservation, which embodies several statutes designed to conserve natural resources and protect the environment, the Director of DEQ failed to conduct an "investigation and evaluation" to determine that no substantial present or potential danger to human health or environment exists before issuing the landfill permit to BFI. Specifically R.I.S.E. contends that the Director of DEQ did not investigate and evaluate as required by § 10.1-1408.1. This code section provides:

> No permit for a new solid waste management facility shall be issued until the Director has determined, *after investigation and evaluation* of comments by the local government, that the proposed facility poses no substantial present or potential danger to human health or the environment [emphasis added].

R.I.S.E. also contends that, to the extent the landfill facility damages property, the DEQ permit grant is a taking violative of due process of laws.

First, R.I.S.E. suggests that by reason of the § 10.1-1408.1 statutory requirement the director of DEQ should have independently conducted an investigation and made an evaluation of no adverse human health or environmental impact before issuing the landfill permit. An examination of the statute does not indicate a requirement of such an investigation and finding. By the statutory language in § 10.1-1408.1 the "investigation and evaluation" is not by itself but, as written, modifies "comments by local government." In other words the Director is required to investigate and evaluate the comments of the local government authority to see that the proposed facility has or has not any impact on human health or the environment. So, as a matter of statutory construction, the statute R.I.S.E. relies on does not prescribe the kind of independent investigation suggested. There is no dispute that King and Queen County certified that the location and operation of the landfill complied with applicable ordinances.

Secondly, R.I.S.E. cites various instances of human health and environmental implications surrounding the issuance of the landfill permit. These include: air, dust, gas, the character of the area where the landfill is located, wildlife, endangered species, surface and ground water, water supplies, wetlands, noise, roads and roads use, and historic resources and sites.

The DEQ operates under solid waste regulations promulgated by the Virginia Waste Management Board. These govern landfill matters covering both procedures for landfill permit applications and substantive standards for landfill operations. These same regulations control and set standards for siting, design, construction, operation, monitoring, and closure of landfills. Steps in the permit process are governed by regulations as well. The process includes the permit application, permit review, draft permit and the final issuance. Before construction, the regulations allow for public participation by way of a public meeting after notice when there is an opportunity for public comments, which occurred in this case. R.I.S.E. points out that most of the persons attending the public comment meeting opposed the landfill, an assertion DEQ does not contest. The question for

the Court in this appeal is, on the points raised, was there a failure of the agency to comply with the scope of authority conferred by the legislature as a matter of law. *Muse v. Virginia Alcohol Beverage Control Bd.*, 9 Va. App. 74, 78 (1989).

DEQ argues that since "investigation" and "evaluation" is not defined, either procedurally or substantively, it has to approach its charge by the legislature with the tools given according to the area of expertise reserved to it. It contends that the things R.I.S.E. points out affecting the environment and human health are covered by the waste management regulations. DEQ also contends that it has control over some of the concerns raised and others it does not. In those instances where it does not have control, appropriate checks were made with other appropriate agencies, state and federal, that do.

The record supports this in large part and in other parts there is no indication one way or the other. There is no other suggestion that the DEQ agency action here did not otherwise comply with the applicable regulations or law governing the concerns the appellant raises. For example, the regulations and the landfill permit itself in this case require BFI to have a gas management system for the control of migration of decomposition gases. In this appeal R.I.S.E. does not contest any other requirement in the regulations relating to the application process or operations under the permit. There is nothing in the record showing that any of the regulations that could address the concerns R.I.S.E. point to were not considered in the process required by any applicable regulation. The Court has to confine its attention to the points raised.

While the Court is aware of complaints of citizens to projects like this as "not in my back yard," on present law, there is no support in the record that DEQ acted other than in compliance with it.

For the foregoing reasons, it is not necessary to address the "taking" claim. Counsel for DEQ shall prepare and submit a suitable draft order affirming the DEQ grant of the permit in this instance. The order should note the appellant's exceptions.